JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
Chief, Corporate and Securities Fraud Strike Force
JENNA G. WILLIAMS (Cal. Bar No. 307975)
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Corporate and Securities Fraud Strike Force
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2429
     Facsimile: (213) 894-0141
     Email:    Nisha.Chandran@usdoj.gov

GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Department of Justice
THEODORE M. KNELLER (D.C. Bar No. 978680)
ADAM L.D. STEMPEL (D.C. Bar No. 1615015)
Trial Attorneys, Fraud Section
Criminal Division, U.S. Department of Justice
     1400 New York Avenue, NW
     Washington, DC 20530
     Telephone: (202) 514-5799
     Facsimile: (202) 514-3708
     Email:    Theodore.Kneller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

2/10/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ asi _____ DEPUTY

                    UNITED STATES DISTRICT COURT

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,              No. CR 25-00042-SVW

          Plaintiff,                   PLEA AGREEMENT FOR DEFENDANT
                                       IBRAHIM AMEEN ALHUSSEINI
               v.

IBRAHIM AMEEN ALHUSSEINI,

          Defendant.


     1.   This constitutes the plea agreement between IBRAHIM AMEEN

ALHUSSEINI ("defendant") and the United States Attorney's Office for

1   the Central District of California (the "USAO") and the Fraud Section

2   of the U.S. Department of Justice ("DOJ" and together with the USAO,

3   the "United States") in the above-captioned case.  This agreement is

4   limited to the USAO and DOJ and cannot bind any other federal, state,

5   local, or foreign prosecuting, enforcement, administrative, or

6   regulatory authorities.

7                           DEFENDANT'S OBLIGATIONS

8       2.   Defendant agrees to:

9           a.   Give up the right to indictment by a grand jury and,

10  at the earliest opportunity requested by the United States and

11  provided by the Court, appear and plead guilty to the single-count

12  superseding information in <u>United States v. Ibrahim Ameen AlHusseini</u>,

13  CR No. 25-00052-SVW, in the form attached to this agreement as

14  Exhibit A or a substantially similar form, which charges defendant

15  with wire fraud, in violation of 18 U.S.C. § 1343.

16          b.   Not contest facts agreed to in this agreement.

17          c.   Abide by all agreements regarding sentencing contained

18  in this agreement.

19          d.   Appear for all court appearances, surrender as ordered

20  for service of sentence, obey all conditions of any bond, and obey

21  any other ongoing court order in this matter.

22          e.   Not commit any crime; however, offenses that would be

23  excluded for sentencing purposes under United States Sentencing

24  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

25  within the scope of this agreement.

26          f.   Be truthful at all times with the United States

27  Probation and Pretrial Services Office and the Court.

28

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees to cooperate fully with the United States, the Federal Bureau of Investigation and United States Postal Inspection Service, and, as directed by the United States, any other federal, state, local, or foreign prosecuting, enforcement,

3

administrative, or regulatory authority.  This cooperation requires defendant to:

       a.    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

       b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the United States or compelled by subpoena or court order.

       c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the United States, or its designee, inquires.

       d.    If requested to do so by the United States, act in an undercover capacity to the best of defendant's ability in connection with criminal investigations by federal, state, local, or foreign law enforcement authorities, in accordance with the express instructions of those law enforcement authorities.  Defendant agrees not to act in an undercover capacity, tape record any conversations, or gather any evidence except after a request by the United States and in accordance with express instructions of federal, state, local, or foreign law enforcement authorities.

    4.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated December 17, 2024 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath,

1  at the guilty plea hearing and the agreed to factual basis statement

2  in this agreement.

3                    THE UNITED STATES' OBLIGATIONS

4      5.    The United States agrees to:

5          a.    Not contest facts agreed to in this agreement.

6          b.    Abide by all agreements regarding sentencing contained

7  in this agreement.

8          c.    At the time of sentencing, move to dismiss the

9  underlying information as against defendant.  Defendant agrees,

10 however, that at the time of sentencing the Court may consider any

11 dismissed charges in determining the applicable Sentencing Guidelines

12 range, the propriety and extent of any departure from that range, and

13 the sentence to be imposed.

14         d.    At the time of sentencing, provided that defendant

15 demonstrates an acceptance of responsibility for the offense up to

16 and including the time of sentencing, recommend a two-level reduction

17 in the applicable Sentencing Guidelines offense level, pursuant to

18 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

19 additional one-level reduction if available under that section.

20     6.    The United States further agrees:

21         a.    Not to offer as evidence in its case-in-chief in the

22 above-captioned case or any other criminal prosecution that may be

23 brought against defendant by the United States, or in connection with

24 any sentencing proceeding in any criminal case that may be brought

25 against defendant by the United States, any Cooperation Information.

26 Defendant agrees, however, that the United States may use both

27 Cooperation Information and Plea Information: (1) to obtain and

28 pursue leads to other evidence, which evidence may be used for any

purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.    Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.    If the United States determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline

range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7.    Defendant understands the following:

a.    Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.    Nothing in this agreement requires the United States or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.    Defendant cannot withdraw defendant's guilty plea if the United States does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the United States makes such a motion and the Court does not grant it or if the Court grants such a United States motion but elects to sentence above the reduced range.

d.    At this time the United States makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the United States.

e.    The United States' determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

1

## NATURE OF THE OFFENSE

2      8.    Defendant understands that for defendant to be guilty of

3  the crime charged in the first superseding information, that is, wire

4  fraud, in violation of Title 18, United States Code, Section 1343,

5  the following must be true: (1) defendant knowingly participated in a

6  scheme or plan to defraud, or a scheme or plan for obtaining money or

7  property by means of false or fraudulent pretenses, representations,

8  or promises; (2) statements made as part of the scheme were material,

9  that is, they had a natural tendency to influence, or were capable of

10  influencing, a person to part with money or property; (3) defendant

11  acted with the intent to defraud, that is, the intent to deceive and

12  cheat; and (4) defendant used, or caused to be used, an interstate

13  wire communication to carry out or attempt to carry out an essential

14  part of the scheme.

15

## PENALTIES AND RESTITUTION

16      9.    Defendant understands that the statutory maximum sentence

17  that the Court can impose for a violation of Title 18, United States

18  Code, Section 1343, is: 20 years imprisonment; a 3-year period of

19  supervised release; a fine of $250,000 or twice the gross gain or

20  gross loss resulting from the offense, whichever is greatest; and a

21  mandatory special assessment of $100.

22      10.    Defendant understands that defendant will be required to

23  pay full restitution to the victim(s) of the offense to which

24  defendant is pleading guilty.  Defendant agrees that, in return for

25  the United States' compliance with its obligations under this

26  agreement, the Court may order restitution to persons other than the

27  victim(s) of the offense to which defendant is pleading guilty and in

28  amounts greater than those alleged in the count to which defendant is

pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty for any losses suffered by that victim as a result.  The parties currently believe that the applicable amount of restitution is approximately $145 million, and the defendant agrees that the Court may order restitution in the amount of $145 million based on this agreement, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or

supervised release in another case and suspension or revocation of a

professional license.  Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw

defendant's guilty plea.

13.  Defendant and his counsel have discussed the fact that, and

defendant understands that, if defendant is not a United States

citizen, the conviction in this case makes it practically inevitable

and a virtual certainty that defendant will be removed or deported

from the United States.  Defendant may also be denied United States

citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that

defendant can raise in immigration proceedings to avoid or delay

removal, removal is presumptively mandatory and a virtual certainty

in this case.  Defendant further understands that removal and

immigration consequences are the subject of a separate proceeding and

that no one, including his attorney or the Court, can predict to an

absolute certainty the effect of his conviction on his immigration

status.  Defendant nevertheless affirms that he wants to plead guilty

regardless of any immigration consequences that his plea may entail,

even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

14.  Defendant admits that defendant is, in fact, guilty of the

offense to which defendant is agreeing to plead guilty.  Defendant

and the United States agree to the statement of facts provided below

and agree that this statement of facts is sufficient to support a

plea of guilty to the charge described in this agreement and to

establish the Sentencing Guidelines factors set forth in paragraph 15

below but is not meant to be a complete recitation of all facts

1  relevant to the underlying criminal conduct or all facts known to
2  either party that relate to that conduct.

3       Beginning no later than in or about March 2020, and continuing
4  through in or about February 2023, in Los Angeles County, within the
5  Central District of California, and elsewhere, defendant along with
6  Joseph Sanberg ("Sanberg"), knowingly and with intent to defraud,
7  participated in and executed a scheme to defraud INVESTOR FUND A and
8  INVESTOR FUND B, as to material matters, and to obtain money and
9  property from these victims by means of material false and fraudulent
10 pretenses, representations, and promises, including untrue statements
11 and omissions concerning defendant's financial assets and net worth.

12      Beginning no later than January 2020, Sanberg, who was an
13 associate of defendant, began negotiating the terms of a $55 million
14 loan from INVESTOR FUND A to Sanberg.  Under the terms of the loan,
15 Sanberg pledged approximately 10.3 million shares of stock in
16 Aspiration Partners as collateral.  On or around January 26, 2020,
17 Sanberg introduced defendant to INVESTMENT ADVISER 1 to be the seller
18 of a put option to INVESTOR FUND A.  Sanberg also guided defendant in
19 his negotiations with INVESTMENT ADVISER 1 regarding the March 2020
20 put option.  As a condition of making the loan to Sanberg, INVESTMENT
21 ADVISER 1 negotiated for INVESTOR FUND A to purchase a put option
22 from defendant and two corporate entities that defendant controlled
23 (the "March 2020 put option").  The March 2020 put option
24 contractually required defendant to pay $55 million to INVESTOR FUND
25 A if Sanberg defaulted on the $55 million loan and acted as a form of
26 a financial guarantee on the $55 million loan from INVESTOR FUND A to
27 Sanberg by mitigating the risk to INVESTOR FUND A if Sanberg
28 defaulted on the loan.  Specifically, in the event of Sanberg's

11

1    default on the loan, defendant was obligated to purchase the

2    approximately 10.3 million shares of Aspiration Partners stock that

3    Sanberg pledged against the $55 million loan as collateral.

4    Defendant knew that INVESTOR FUND A's $55 million loan to Sanberg was

5    contingent on INVESTOR FUND A entering into the March 2020 put option

6    agreement with defendant.

7        The terms of the March 2020 put option also required that

8    defendant and the two co-signing entities he controlled maintain a

9    collective total net worth of $137,500,000 and a liquid net worth of

10   $68,750,000 to have sufficient assets to pay $55 million to INVESTOR

11   FUND A if Sanberg defaulted.  At all relevant times, defendant did

12   not have, and Sanberg knew that defendant did not have, a liquid net

13   worth or sufficient assets to satisfy those requirements.  At

14   Sanberg's direction, defendant made untrue statements of material

15   fact to INVESTOR FUND A about defendant's personal wealth, and

16   defendant provided INVESTOR FUND A with falsified account statements

17   for defendant's brokerage accounts at BROKER 1 and defendant's

18   personal bank accounts.  Defendant and Sanberg knew that the

19   falsified statements inflated the value of the assets in defendant's

20   accounts by tens of millions of dollars.

21       For example, on or about March 10, 2020, defendant sent a

22   document by email to INVESTMENT ADVISER 1 that defendant falsely

23   claimed was his true and accurate securities brokerage account

24   statement with BROKER 1 as of December 31, 2019.  Defendant's

25   falsified account statement stated that defendant held more than $86

26   million in securities in accounts at BROKER 1.  In reality,

27   defendant's BROKER 1 accounts held a total of approximately

28   $4,390.10.  Defendant also sent a document that he falsely claimed

12

was a true and accurate statement of his personal bank accounts as of February 20, 2020.  Defendant's falsified bank account statement stated that defendant held more than $25 million in those bank accounts.  In reality, as of February 20, 2020, defendant's bank accounts held a total of approximately $43,267.74.

On or about March 16, 2020, INVESTOR FUND A purchased the March 2020 put option from defendant.  Under the terms of the March 2020 put option, defendant received approximately $6 million of the $55 million loan at the time of the loan's execution as consideration (also known as a "premium payment") for guaranteeing Sanberg's repayment of the loan.

On or about November 4, 2021, Sanberg refinanced the loan against his 10.3 million shares of Aspiration Partners stock.  Under the refinanced loan, INVESTOR FUND B loaned $145 million to Sanberg, and Sanberg pledged approximately 10.3 million shares of Aspiration Partners stock as collateral.  INVESTMENT ADVISER 1 negotiated for INVESTOR FUND B to purchase a new put option from defendant, in which defendant was obligated to pay $65 million to INVESTOR FUND B if Sanberg defaulted on the $145 million loan (the "November 2021 put option").  Defendant knew that INVESTOR FUND B's $145 million loan to Sanberg was contingent on INVESTOR FUND B entering into the November 2021 put option agreement with defendant.

On or about November 3, 2021, defendant caused his agent in California, to send an interstate wire communication, specifically an email, to INVESTMENT ADVISER 1, located in New York, and others, that contained documents that defendant falsely claimed were a true and accurate account statement as of September 30, 2021, of defendant's investment portfolio with BROKER 1, and a true and accurate

13

statement, as of September 22, 2021, of defendant's personal bank
accounts.  The falsified BROKER 1 account statement stated that
defendant held more than $199 million in securities in accounts at
BROKER 1.  In reality, defendant's BROKER 1 account statements show
that as of September 30, 2021, defendant's BROKER 1 accounts held a
total of approximately $2,693.63.  The falsified personal bank
account statements stated that, as of September 22, 2021, defendant
held more than $21 million in his accounts.  In reality, defendant's
personal bank account statements show that as of September 22, 2021,
his personal bank accounts held a total of approximately $11,556.89.
The next day, INVESTOR FUND B purchased the November 2021 put option
from defendant.  The terms of the November 2021 put option similarly
required that defendant have sufficient assets to pay $65 million to
INVESTOR FUND B in the event of Sanberg's default.  Under the terms
of the November 2021 put option, defendant received approximately
$6.3 million at the time of execution as a premium payment in
consideration for guaranteeing Sanberg's repayment of the loan.

To maintain and conceal defendant's deception of INVESTMENT
ADVISER 1, INVESTOR FUND A, and INVESTOR FUND B, defendant submitted
or caused to be submitted falsified brokerage and personal bank
account statements to INVESTMENT ADVISER 1 on at least 24 occasions
between in or around April 2020 and in or around February 2023.
Defendant caused the falsified statements to be altered at Sanberg's
direction and with Sanberg's assistance and then submitted or caused
his agent to submit the statements to INVESTMENT ADVISER 1.  Nearly
all of these transmissions were accompanied by a certificate of
compliance, in which defendant affirmed by electronic signature that
the brokerage and personal bank account statements, among other

14

statements, were "in each case true, correct and complete copies."
The falsified brokerage statements represented that defendant's
brokerage account held highly liquid and publicly tradeable
securities that were, depending on the month and year, worth between
approximately $80 million to $200 million.  In fact, defendant's
brokerage account during this period held between approximately
$2,000 and $15,000.  The falsified personal bank statements
represented that defendant's bank accounts were worth between
approximately $21 million to $25 million.  In fact, defendant's
personal bank accounts during this period held between approximately
$11,000 and $500,000.

On or about November 2022, Sanberg defaulted on the loan to
INVESTOR FUND B, and to secure a forbearance, defendant signed a
December 5, 2022, amendment with INVESTOR FUND B that raised the put
option price to $75 million.  On or about June 27, 2023, after
Sanberg defaulted on the $145 million loan, INVESTOR FUND B exercised
the November 2021 put option that contractually required defendant to
pay INVESTOR FUND B $75 million in exchange for approximately 10.3
million shares of Aspiration Partners stock.  Defendant admits that
INVESTOR FUND B had losses of approximately $145 million, and
defendant personally received approximately $12.3 million in put
premium payments.

SENTENCING FACTORS

15.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

16.   Defendant and the United States agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:              7     [U.S.S.G. § 2B1.1(a)(1)]

Loss more than $65,000,000    +24   [U.S.S.G. § 2B1.1(b)(1)(M)]

At the time of sentencing, the government will recommend that the Court apply a four-level downward departure/variance pursuant to 18 U.S.C. § 3553(a) because the Sentencing Guidelines calculation of loss in the amount of $145 million overstates the seriousness of the offense as it relates to defendant ALHUSSEINI.  Defendant and the United States reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

17.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18.   Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19.   Defendant understands that by pleading guilty, defendant gives up the following rights:

16

1          a.    The right to persist in a plea of not guilty.

2          b.    The right to a speedy and public trial by jury.

3          c.    The right to be represented by counsel – and if

4    necessary have the Court appoint counsel - at trial.  Defendant

5    understands, however, that, defendant retains the right to be

6    represented by counsel – and if necessary have the Court appoint

7    counsel – at every other stage of the proceeding.

8          d.    The right to be presumed innocent and to have the

9    burden of proof placed on the government to prove defendant guilty

10   beyond a reasonable doubt.

11         e.    The right to confront and cross-examine witnesses

12   against defendant.

13         f.    The right to testify and to present evidence in

14   opposition to the charges, including the right to compel the

15   attendance of witnesses to testify.

16         g.    The right not to be compelled to testify, and, if

17   defendant chose not to testify or present evidence, to have that

18   choice not be used against defendant.

19         h.    Any and all rights to pursue any affirmative defenses,

20   Fourth Amendment or Fifth Amendment claims, and other pretrial

21   motions that have been filed or could be filed.

22                   WAIVER OF APPEAL OF CONVICTION

23        20.  Defendant understands that, with the exception of an appeal

24   based on a claim that defendant's guilty plea was involuntary, by

25   pleading guilty defendant is waiving and giving up any right to

26   appeal defendant's conviction on the offense to which defendant is

27   pleading guilty.  Defendant understands that this waiver includes,

28   but is not limited to, arguments that the statute to which defendant

                                17

is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

21.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $145 million; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22.  The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 22 and the criminal history category calculated by the Court, the United States gives up its right to appeal any portion of the sentence, with the exception

1  that the United States reserves the right to appeal the amount of

2  restitution ordered if that amount is less than $145 million.

3  WAIVER OF COLLATERAL ATTACK

4  23.  Defendant also gives up any right to bring a post-

5  conviction collateral attack on the conviction or sentence, including

6  any order of restitution, except a post-conviction collateral attack

7  based on a claim of ineffective assistance of counsel, a claim of

8  newly discovered evidence, or an explicitly retroactive change in the

9  applicable Sentencing Guidelines, sentencing statutes, or statutes of

10  conviction. Defendant understands that this waiver includes, but is

11  not limited to, arguments that the statute to which defendant is

12  pleading guilty is unconstitutional, and any and all claims that the

13  statement of facts provided herein is insufficient to support

14  defendant's plea of guilty.

15  RESULT OF WITHDRAWAL OF GUILTY PLEA

16  24.  Defendant agrees that if, after entering a guilty plea

17  pursuant to this agreement, defendant seeks to withdraw and succeeds

18  in withdrawing defendant's guilty plea on any basis other than a

19  claim and finding that entry into this plea agreement was

20  involuntary, then (a) the United States will be relieved of all of

21  its obligations under this agreement, including in particular its

22  obligations regarding the use of Cooperation Information; (b) in any

23  investigation, criminal prosecution, or civil, administrative, or

24  regulatory action, defendant agrees that any Cooperation Information

25  and any evidence derived from any Cooperation Information shall be

26  admissible against defendant, and defendant will not assert, and

27  hereby waives and gives up, any claim under the United States

28  Constitution, any statute, or any federal rule, that any Cooperation

19

Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

25.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the United States and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

26.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely

minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The United States will be relieved of all its obligations under this agreement; in particular, the United States: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the United States would otherwise have been obligated to dismiss pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The United States will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

28.    Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1
2

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

3    29.   Defendant understands that the Court and the United States
4  Probation and Pretrial Services Office are not parties to this
5  agreement and need not accept any of the United States' sentencing
6  recommendations or the parties' agreements to facts or sentencing
7  factors.

8    30.   Defendant understands that both defendant and the United
9  States are free to: (a) supplement the facts by supplying relevant
10 information to the United States Probation and Pretrial Services
11 Office and the Court, (b) correct any and all factual misstatements
12 relating to the Court's Sentencing Guidelines calculations and
13 determination of sentence, and (c) argue on appeal and collateral
14 review that the Court's Sentencing Guidelines calculations and the
15 sentence it chooses to impose are not error, although each party
16 agrees to maintain its view that the calculations in paragraph 18 are
17 consistent with the facts of this case.  While this paragraph permits
18 both the United States and defendant to submit full and complete
19 factual information to the United States Probation and Pretrial
20 Services Office and the Court, even if that factual information may
21 be viewed as inconsistent with the facts agreed to in this agreement,
22 this paragraph does not affect defendant's and the United States'
23 obligations not to contest the facts agreed to in this agreement.

24    31.   Defendant understands that even if the Court ignores any
25 sentencing recommendation, finds facts or reaches conclusions
26 different from those agreed to, and/or imposes any sentence up to the
27 maximum established by statute, defendant cannot, for that reason,
28 withdraw defendant's guilty plea, and defendant will remain bound to

23

fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

32. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        33.  The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    JOSEPH T. MCNALLY
     Acting United States Attorney

9

10   _____        2/7/2025

     BRETT A. SAGEL                          Date
11   JENNA G. WILLIAMS
     NISHA CHANDRAN
12   Assistant United States Attorneys

13   FRAUD SECTION OF THE U.S.
     DEPARTMENT OF JUSTICE
14
     GLENN S. LEON
15   Chief, Fraud Section
     Criminal Division
16

17   _____
     THEODORE M. KNELLER
18   ADAM L.D. STEMPEL
     Trial Attorneys, Fraud Section
19   Criminal Division

20

21   _____        02/07/2025
     IBRAHIM AMEEN ALHUSSEINI                Date
22   Defendant

23

24   _____        02/07/25
     RANDY S. GROSSMAN                       Date
25   NAEUN RIM
     ANDREW BESHAI
26   JESSICA NALL
     Attorney for Defendant IBRAHIM
27   AMEEN ALHUSSEINI

28

                        25

1                          CERTIFICATION OF DEFENDANT

2          I have read this agreement in its entirety.  I have had enough

3     time to review and consider this agreement, and I have carefully and

4     thoroughly discussed every part of it with my attorney.  I understand

5     the terms of this agreement, and I voluntarily agree to those terms.

6     I have discussed the evidence with my attorney, and my attorney has

7     advised me of my rights, of possible pretrial motions that might be

8     filed, of possible defenses that might be asserted either prior to or

9     at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10    of relevant Sentencing Guidelines provisions, and of the consequences

11    of entering into this agreement.  No promises, inducements, or

12    representations of any kind have been made to me other than those

13    contained in this agreement.  No one has threatened or forced me in

14    any way to enter into this agreement.  I am satisfied with the

15    representation of my attorney in this matter, and I am pleading

16    guilty because I am guilty of the charge and wish to take advantage

17    of the promises set forth in this agreement, and not for any other

18    reason.

19    _____          02/07/2025
                                                _____
20    IBRAHIM AMEEN ALHUSSEINI                  Date
      Defendant

21

22

23

24

25

26

27

28

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am one of IBRAHIM AMEEN ALHUSSEINI's attorneys. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        02/07/25
RANDY S. GROSSMAN                       Date
NAEUN RIM
ANDREW BESHAI
JESSICA NALL
Attorneys for Defendant IBRAHIM
AMEEN ALHUSSEINI

27